UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEONIS GRUBBS,

         Petitioner,                            Hon. Janet T. Neff

v.                                       Case No. 1:14-CV-282

LORI GIDLEY,

         Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Grubbs' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Grubbs' petition be **denied**.

## BACKGROUND

As a result of events allegedly occurring on December 16, 2010, Petitioner was charged with: (1) first degree home invasion; (2) domestic violence; and (3) third degree home invasion. (Trial Transcript, June 6, 2011, 19-20). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Latice Whiteside**

Whiteside has two children, the youngest of which was fathered by Petitioner.  (Trial Transcript, June 7, 2011, 27-28).  As of September 2010, Whiteside resided with Petitioner and her two children at 2928 Marshall, Apartment D-21, Grand Rapids, Michigan.  (Tr. 28-29).  One day that month, Whiteside and Petitioner were arguing.  (Tr. 28-33).  Whiteside, who was "tired of arguing with [Petitioner]," told Petitioner "to leave."  (Tr. 32).  Petitioner responded, "I don't have to go nowhere because I have belongings here."  (Tr. 32).  Whiteside then contacted the police who informed her that Petitioner "didn't have to go nowhere because his belongings were in the house." (Tr. 30-32).  Petitioner refused either to leave the residence or remove any of his possessions.  (Tr. 30).

In November 2010, Whiteside again contacted the police in an effort to remove Petitioner from her residence.  (Tr. 31).  The police, however, again informed Whiteside that they could not remove Petitioner from the residence because his belongings were there.  (Tr. 31). Petitioner subsequently began staying elsewhere, but in light of Petitioner's history of physical violence toward her, Whiteside obtained a Personal Protection Order (PPO) against Petitioner.  (Tr. 32-39).  Pursuant to the terms of the PPO, Petitioner was prohibited from contacting Whiteside or entering her residence.  (Tr. 38-39).

On December 16, 2010, Whiteside was at home with her youngest child and several of her cousins.  (Tr. 40-41).  At some point that day, Petitioner arrived at Whiteside's residence demanding to speak with Whiteside.  (Tr. 41-42).  Whiteside refused Petitioner entry, telling him that they had "nothing to talk about."  (Tr. 42).  Petitioner responded by "kick[ing] the door down," entering the residence, and assaulting Whiteside.  (Tr. 42-52).

2

**Emily Andersen**

As of November 16, 2010, Andersen was employed as a pregnancy counselor and in this capacity had a relationship with Latice Whiteside. (Trial Transcript, June 7, 2011, 95). On this date, Whiteside asked Andersen to serve Petitioner with a Personal Protection Order (PPO) she had obtained. (Tr. 95-96). Andersen agreed and personally served the PPO on Petitioner later that day. (Tr. 96-100).

**Tiara Andrews**

On December 16, 2010, Andrews and her son visited Latice Whiteside at her residence at 2928 Marshall, Apartment D-21. (Trial Transcript, June 7, 2011, 103-04). Sometime that evening, Andrews heard a "boom" immediately after which she observed Petitioner "coming through the door" to the residence. (Tr. 105-07). Petitioner walked over to Whiteside and assaulted her. (Tr. 106-08).

**Scott Klawon**

As of December 16, 2010, Klawon was employed as a police officer for the City of Grand Rapids. (Trial Transcript, June 7, 2011, 117). At approximately 11:54 p.m. that evening, Officer Klawon was dispatched to investigate a domestic disturbance at 2928 Marshall Avenue. (Tr. 117). When Klawon arrived at Latrice Whiteside's residence he immediately discerned that the door to the residence had been "kicked open." (Tr. 117-18). Whiteside informed Officer Klawon that when she refused to allow Petitioner into her residence, Petitioner "kicked the door in" and assulted her. (Tr. 120-21). Officer Klawon spoke with the other individuals who were present when the

3

incident occurred all of whom provided similar statements.  (Tr. 121).

**Holly Rosen**

Rosen earned a Master's Degree in Social Work and has been working in that field since 1987.  (Trial Transcript, June 7, 2011, 128-29).  Rosen is presently the Director of Safe Place, a domestic violence program affiliated with Michigan State University.  (Tr. 129-31).  Rosen was permitted to testify as an expert in the field of domestic violence.  (Tr. 131).  Rosen observed that domestic violence concerns more than just physical violence, but also encompasses social isolation, threats of violence, verbal abuse, and economic abuse.  (Tr. 132-35).  Rosen also observed that many victims of domestic violence "blame themselves for the abuse" and "minimize the abuse."  (Tr. 135-37).  Rosen further observed that it is not uncommon for victims of domestic abuse to lie about the abuse in an attempt to help the abuser avoid the consequences of their actions.  (Tr. 137-38).

**Valerie Carrasco**

As of December 20, 2010, Carrasco was employed as Grand Rapids Police Officer assigned to the Family Services Unit.  (Trial Transcript, June 7, 2011, 149-50).  On that morning, Latice Whiteside met with Officer Carrasco and provided a written statement regarding her recent encounter with Petitioner.  (Tr. 150-51).

**Torey Whitten**

As of November 2, 2010, Whitten was employed as a police officer for the City of Grand Rapids.  (Trial Transcript, June 7, 2011, 159-60).  On this date, Whitten was dispatched to

4

Latice Whiteside's residence to investigate "a possible domestic" incident. (Tr. 159-61). Officer Whitten observed that "there was some property that [Petitioner and Whiteside] were trying to figure out whose is what and who got what." (Tr. 151-52). Whitten explained to Whiteside that "we don't determine whose property is whose." (Tr. 152-53).

Following the presentation of evidence, the jury found Petitioner guilty of all three charges. (Trial Transcript, June 8, 2011, 64). Petitioner was sentenced as a fourth felony offender to serve 10-40 years in prison on the first degree home invasion conviction and lesser sentences on the other convictions. (Sentence Transcript, July 10, 2011, 5-6). Petitioner appealed his conviction and sentence to the Michigan Court of Appeals asserting the following claims:

I.      The trial court's refusal to allow Mr. Grubbs to testify and his removal from the courtroom violated his constitutional rights to testify, to be present, due process, and confrontation.

II.     Mr. Grubbs' conviction for both home invasion first and the necessarily included lesser offense of home invasion third violated the Double Jeopardy Clause. His conviction must be vacated.

III.    The trial court erred in scoring 10 points for OV 10 and 1 point for OV 16.  Resentencing is required.

The Michigan Court of Appeals affirmed Petitioner's conviction and sentence. *People v. Grubbs*, 2012 WL 4747180 (Mich. Ct. App., Oct. 4, 2012). Asserting the same three issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Grubbs*, 828 N.W.2d 39 (Mich. 2013). Petitioner initiated the present action on March 17, 2014, asserting the three issues identified above.

5

## STANDARD OF REVIEW

Grubbs' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999).  The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411.  Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context."  *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary."  *Ayers*, 623 F.3d at 308.  Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds

7

unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where

state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir.

2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not

addressed by the state courts).

## ANALYSIS

**I.          Petitioner's Removal from the Courtroom**

At the outset of the third day of trial, outside the presence of the jury, the trial judge

conducted a brief discussion regarding a particular legal issue.  (Trial Transcript, June 8, 2011, 3-7).

At the conclusion of this discussion, the following transpired:

| | |
|---|---|
| MR. ZOET:[1] | I'll advise my client of the circumstances here, Your Honor, He advises me that he has a - a statement he'd like to make to the Court. |
| THE COURT: | All right. Sir, this is - this statement - this - is there something that you wish to say that your attorney can't argue for you? You need to stand when you address the Court, sir. |
| PETITIONER: | I, Neonis Grubbs, would like to dismiss Mr. Lawrence Zoet from my case on the grounds of inefficient counsel. |
| THE COURT: | Are - are you saying you wish to represent yourself in the rest of this trial, sir? |
| PETITIONER: | No, I'm saying I would like to get appointed another appointed appointed (sic) attorney. |
| THE COURT: | Well, we are in the middle of a trial. I anticipate that trial will be done probably this morning or later this afternoon. |
| PETITIONER: | Problem is - |
| THE COURT: | Sir! Sir! I've listened to your request. Okay? This - -jeopardy |

---

[1]  Lawrence Zoet was Petitioner's trial counsel.

has attached when that Jury was sworn, you can't - - you have no specific right to, all of a sudden, say you want a different attorney here. That would prejudice the prosecution, it would be a waste of time for all the people that have been here and committed -

PETITIONER:     It is not wasting my time.

THE COURT:      Sir! This is - this is time for me to talk, not you. Okay? I - I - your - he - the defendant is clearly not making an unequivocal request to represent himself. He is requesting a different attorney. And, sir, what basis are you asking that on other than what you have said is ineffective assistance of counsel?

PETITIONER:     We had - we had a heated argument, and I feel that he doesn't have my best interest. And it's right here in writing that we had a heated argument.

THE COURT:      All right. Well, I - I don't think there's a basis at this point in time to dismiss Mr. Zoet. I am familiar with Mr. Zoet. He -

PETITIONER:     That's not what I am familiar with.

THE COURT:      Sir, if you say another word, you're going to be listening to the rest of this trial in there. You may be seated now. I've known Mr. Zoet for probably 25 years at least. He has - has done a significant amount of criminal defense work. I think he's done a reasonable job during the course of this trial. There - I have not seen anything that would indicate to me that there is ineffective assistance of counsel. I understand, sir, that when things are not going well, that it's very difficult for a defendant, and oftentimes there are major disagreements between the attorney who is representing the defendant and the defendant. And I know that from personal experience after representing defendants all across this state for more than 22 years in thousands of cases before I took the bench. So, accordingly, I'm going to deny your request at this time to remove counsel. We're going to proceed with this trial. Let's get -

PETITIONER:     Counsel must cease.

THE COURT:      - let's get the Jury in here.

10

PETITIONER:   Counsel must cease.

THE COURT:   Sir, stop -

PETITIONER:   I cannot - I cannot - I cannot go on with this case.

THE COURT:   Sir! If - I'm warning you, if you make un outburst in front of the Jury, then I will remove you from the courtroom and you'll have to listen to this trial in lockup. Do you understand that? And I have the authority and there's case law that allows me to do that. You cannot be disruptive to this Court. So that is your second warning that you've had. The third one, you will be listening to this in there. All right?

        Let's get the Jury back in. Also, I do want to state for the record that evidently playing this jail tape has become a problem. We do have auxiliary hearing devices that look like some kind of antenna from My Favorite Martian or something that the Jury will be allowed to use to hear this. Evidently, it will not play through our system.

        However, I'm cautioning both the defendant, the prosecution and defense counsel, that when you have these ear sets on, they broadcast anything that you have to say. So when this tape is being played, sir, if you - - if you need to say something to your attorney, write it down. Do not talk or every juror will hear it instantaneously in their headphones. So please do not think that you - - you're communicating with your attorney by speaking with him while this tape is being played. Now, let's get the Jury back in.

COURT CLERK:   All rise, please. We're all set? Okay. All right. Come on in.

(At 9:05 a.m., Jury enters the courtroom)

THE COURT:   Please be seated. Are we on the record?

COURT CLERK:   Oh, we're back on the record.

THE COURT:   All right. And good morning, ladies and gentlemen.

THE JURY:   (simultaneously) Good morning.

THE COURT:   I hear - I heard someone make a comment about being back

11

into the refrigerator, but we're not going to have any sleeping judges commercials out of this courtroom, so we do try and keep things a little cooler so that no one is falling asleep, also. Officer, if you want to stand, I'll reswear you this morning, please. Do you solemnly swear to tell the truth, the whole truth and nothing but the truth, so help you God?

DET. CARRASCO:   I do.

THE COURT:   Please be seated. All right. Let's proceed with the tape. Hopefully it works this time.

MS. ESLINGER:[2]   Just to warn everyone -

PETITIONER:   Excuse me, I would like to dismiss the counsel.

THE COURT:   Hold it a second.

PETITIONER:   Inefficient counsel.

(Whereupon, the defendant is escorted out of the courtroom by security)

THE COURT:   All right. Let's excuse the Jury for a moment.

COURT CLERK:   All rise, please.

(At 9:06 a.m., Jury excused from the courtroom)

THE COURT:   Please be seated. Let's go off the record or a moment.

COURT CLERK:   Off the record?

THE COURT:   Yeah. Let's wait and see what transfer has to say, whether or not - he's - he's made his point. Maybe he'll keep his mouth shut. If not, we'll proceed without him.

(At 9:07 a.m., proceedings recess)

(At 9:09 a.m., proceedings reconvene - all parties present. Jury not present)

THE COURT:   All right. Let's keep him separate from his attorney also at

---

[2]  Robin Eslinger was the prosecuting attorney.

12

|                  | this time.                                                                                                                                                                                                                  |
|------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| COURT CLERK:     | We're back on the record.                                                                                                                                                                                                    |
| THE COURT:       | All right. Sir, you've made your point to the Jury. I'm going to instruct them to disregard any statement and tell them that I've ordered that we're proceeding with Mr. Zoet. Do you feel you can keep your mouth shut and - and communicate with your attorney? |
| PETITIONER:      | No, sir. I'm going to - I'm going to say the same thing over and over again.                                                                                                                                                 |
| THE COURT:       | All right. Then I will make a ruling that you can't be present here.                                                                                                                                                         |
| PETITIONER:      | Counsel must cease.                                                                                                                                                                                                          |
| THE COURT:       | I'm going to have you in the lock up. We have speakers in the lock up, is that correct, officers?                                                                                                                            |
| SECURITY:        | Yes, sir.                                                                                                                                                                                                                    |
| PETITIONER:      | My ears will be closed.                                                                                                                                                                                                      |
| THE COURT:       | All right. So that he can listen to the proceedings. And if - at - Mr. Zoet, if you need to take breaks and speak with him, we'll certainly provide that for you.  Sir, go ahead and -                                       |
| MR. ZOET:        | Your Honor, before he leaves, I do have one - we did plan on calling Mr. Grubbs as a witness this morning. How do we intend to handle that?                                                                                  |
| THE COURT:       | Well, we -  we can put him on the stand, and if he becomes unruly, then we'll take him off the stand.                                                                                                                        |
| MR. ZOET:        | Thank you, Your Honor.                                                                                                                                                                                                       |
| THE COURT:       | All right? Okay. Let's get the Jury back in.                                                                                                                                                                                 |

(Tr. 7-12).

After Detective Carrasco's brief testimony concluded the prosecution rested its case,

13

at which point the following transpired:

THE COURT:          All right. Thank you. Mr.Zoet, the prosecution, obviously, has closed their case. Do you wish to argue any motions at this time?

MR ZOET:          Your Honor, l believe the crux of this case is a factual basis. The Court has made various rulings throughout the case regarding the law in this case. I believe that this matter is solely for the Jury to decide, so I'm going to defer a motion for directed verdict at this time.

THE COURT:          You have one witness that you have already called. Do you have other witnesses at this time?

MR. ZOET:          It is my understanding that Mr. Grubbs wishes to testify in this particular case. And I'm going to allow him the opportunity to do so.

THE COURT:          Is that your only additional witness?

MR. ZOET:          It is.

THE COURT:          All right. I'm going to request that the Officers put him in lock-up - in the booth so that you can speak with your client. I suggest that - l strongly suggest that you tell him that he - he certainly is more than willing to testify (sic), but he has to behave appropriately. In other words, if he's going to have further outbursts or continue to say things that he's been ordered not to, then he will not be allowed to testify. So, please, communicate that to him and then we'll bring him out here afterwards and discuss this matter on the record also.

MR. ZOET:          Thank you very much, Your Honor.

THE COURT:          All right. So let's take a few minutes. Let's hope he's cooled down so that he can come back.

SECURITY:          Your Honor?

THE COURT:          Yes?

SECURITY:          I'd like - when he does come back, he'll be - the restraints will be removed. I'd like your permission to apply the taser

belt underneath his clothing. That won't be visible to the Jury.

THE COURT:        Yes. And for the record, the judges have received information with regards to the taser belt. It is a belt that goes underneath clothes so that it is not visible at all, such as shackles are. But there are, I believe, four tasers on it that can be remotely controlled. So I think it would be appropriate under the circumstances.

SECURITY:         Thank you, Your Honor.

THE COURT:        All right. But we'll - let him talk to his attorney. You can bring him out in shackles and we'll see if he's going to cooperate. And if he is, then you can take him back and put the taser belt on him.

SECURITY:         Thank you.

THE COURT:        All right. Mr. Zoet, why don't you find us after you've had a chance to speak with him.

MR. ZOET:         Thank you, Your Honor.

THE COURT:        All right. We're off the record.

(At 9:56 a.m., proceedings recess)

(At 10:00 a.m., proceedings reconvene· all parties present. Jury is not present)

THE COURT:        All right. Please be seated.

COURT CLERK:      We're back on the record.

THE COURT:        All right. The record should reflect that the Jury is not present, however the defendant is back in the room.  Sir, you've had a chance to sit in lock-up for a little bit while we finished that testimony. It's up to you. If you would like to proceed by staying in here and being appropriate -

PETITIONER:       And it is up to me for the case not to go on.

THE COURT:        Well, sir that's - it is not up to you. That's up to this Court. Now, I mean, we can - we can proceed by keeping you in

15

|  |  |
|---|---|
|  | there, and listening to closing arguments. Or you can be in here if - if you will be appropriate and dignified and follow the Court's rules and orders. |
| PETITIONER: | I'm very dignified, but I said counsel must cease.  It must cease. |
| THE COURT: | All right. Sir, you - you've - that has been preserved.  That is on the record. You have a continuing objection to that. You don't need to say that again. It's already preserved for the Court of Appeals. |
| PETITIONER: | That's how I feel. That's what I'm going to say. |
| THE COURT: | All right. Well, I guess - my question to you is can you basically - |
| PETITIONER: | I'm - sir, I'm going to say that. No disrespect. I'm going to say it. If I get up on the stand, that's what I'm going to say. Counsel must cease. |
| THE COURT: | Okay. |
| PETITIONER: | He's fired. |
| THE COURT: | All right. Mr. Zoet, have you had a chance to - to talk with your client when you were in lock - in the booth, there? |
| MR. ZOET: | Your Honor, Mr. Grubbs has pretty much stated his continuing statement in this particular case. He informs me that counsel must cease. That he doesn't want me to represent him any more, and I understand his position.  He also does not want to participate in this proceeding, and he believes that the case must stop immediately, I've advised him that that's not the case.   He refuses to acknowledge that - that observation, so - |
| THE COURT: | All right. Sir, you - |
| PETITIONER: | It is my time that I have to do. You don't have to do any time. It's me. |
| THE COURT: | Sir, at this point, you're - you're not cooperating at all? You're not going to testify, then, is that correct? |

16

| PETITIONER: | Counsel must cease. |
|---|---|
| THE COURT: | All right. Sir, are you willing to sit here and listen and be quiet? |
| PETITIONER: | Counsel must cease. I'm not participating or listening in on anything that I feel that it doesn't have to go on. I don't - I don't want him representing me. |
| THE COURT: | Okay. |
| PETITIONER: | Do you understand that? |
| THE COURT: | You've stated that for the record, and I understand that, sir, but what we're going to do at this point in time, is, unfortunately, I think you've put us in a position where we're going to proceed, then, with closing arguments. Do you have any additional witnesses, counsel? |
| MR. ZOET: | No additional witnesses, Your Honor. |
| THE COURT: | All right. Then proofs are closed. Do you have any rebuttal witnesses? |
| MS. ESLINGER: | No, Your Honor. |

(Tr. 18-22).

Petitioner alleges that his removal from the courtroom violated his constitutional rights to testify and be present during his trial, as well as his rights to due process and confrontation. The United States Supreme Court long ago articulated the applicable standard.

William Allen was tried in Illinois state court for armed robbery. *Illinois v. Allen*, 397 U.S. 337, 338-39 (1970). At Allen's request, the trial court permitted Allen to represent himself, but appointed a licensed attorney to act as stand-by counsel. *Id.* at 339. Allen's inability to conduct himself in a reasonable manner was evident from the outset:

After the State's Attorney had accepted the first four jurors following their voir dire examination, [Allen] began examining the first juror

17

and continued at great length.  Finally, the trial judge interrupted [Allen], requesting him to confine his questions solely to matters relating to the prospective juror's qualifications.  At that point, the petitioner started to argue with the judge in a most abusive and disrespectful manner.  At last, and seemingly in desperation, the judge asked appointed counsel to proceed with the examination of the jurors.  [Allen] continued to talk, proclaiming that the appointed attorney was not going to act as his lawyer.

*Id.* at 339-40.

The trial judge warned Allen that "one more outbreak of that sort and I'll remove you from the courtroom."  *Id.* at 340.  The judge's warning fell upon deaf ears:

[Allen] continued to talk back to the judge, saying, 'There's not going to be no trial, either.  I'm going to sit here and you're going to talk and you can bring your shackles out and straight jacket and put them on me and tape my mouth, but it will do no good because there's not going to be no trial.'  After more abusive remarks by [Allen], the trial judge ordered the trial to proceed in [Allen's] absence.  [Allen] was removed from the courtroom.  The voir dire examination then continued and the jury was selected in the absence of [Allen].

*Id.* at 340.

Allen was nevertheless afforded another opportunity to conform his behavior to the appropriate standard:

After a noon recess and before the jury was brought into the courtroom, [Allen], appearing before the judge, complained about the fairness of the trial and his appointed attorney.  He also said he wanted to be present in the court during his trial.  In reply, the judge said that [Allen] would be permitted to remain in the courtroom if he 'behaved (himself) and (did) not interfere with the introduction of the case.'  The jury was brought in and seated.  Counsel for [Allen] then moved to exclude the witnesses from the courtroom.  [Allen] protested this effort on the part of his attorney, saying: 'There is going to be no proceeding.  I'm going to start talking and I'm going to keep on talking all through the trial.  There's not going to be no trial like this.  I want my sister and my friends here in court to testify for me.'  The trial judge thereupon ordered [Allen] removed from the

> courtroom.  After this second removal, Allen remained out of the courtroom during the presentation of the State's case-in-chief, except that he was brought in on several occasions for purposes of identification.

*Id.* at 340-41.[3]

Allen later moved in federal court for the issuance of a writ of habeas corpus.  *Id.* at 339.  The district court denied the writ, a decision reversed by the court of appeals.  *Id.*  The Supreme Court agreed to hear the case to answer the question "whether an accused can claim the benefit of [the] constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial."  *Id.* at 338.  The Court reversed the decision by the court of appeals to grant Allen's petition for writ of habeas corpus.

The Court first rejected the conclusion by the court of appeals that a "defendant's Sixth Amendment right to be present at his own trial was so 'absolute' that, no matter how unruly or disruptive the defendant's conduct might be, he could never be held to have lost that right so long as he continued to insist upon it."  *Id.* at 342.  As the Court stated, "[w]e cannot agree that the Sixth Amendment, the cases upon which the Court of Appeals relied, or any other cases of this Court so handicap a trial judge in conducting a criminal trial."  *Id.*  The Court, therefore, concluded:

> Although mindful that courts must indulge every reasonable presumption against the loss of constitutional rights, we explicitly hold today that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him

---

[3]   After later demonstrating the ability to act properly, Allen "was permitted to be present through the remainder of the trial, principally his defense, which was conducted by his appointed counsel."  *Id.* at 341.

> in the courtroom. . .The flagrant disregard in the courtroom of
> elementary standards of proper conduct should not and cannot be
> tolerated.   We believe trial judges confronted with disruptive,
> contumacious, stubbornly defiant defendants must be given sufficient
> discretion to meet the circumstances of each case.

*Id.* at 343 (internal citations omitted).

Citing to the *Allen* decision, the Michigan Court of Appeals rejected Petitioner's claim that his removal from the courtroom violated his Confrontation Clause rights. *Grubbs*, 2012 WL 4747180 at *1.  The Michigan Court of Appeals likewise rejected Petitioner's claim that his right to testify was violated.  *Id.* at *1-2.  Specifically, the court concluded that Petitioner, by refusing "to testify about the substance of the case against him and not to cease his requests that the attorney be dismissed. . .[Petitioner] waived his right to testify."  *Id.* at *2.  This conclusion is consistent with relevant authority.  *See, e.g., United States v. Scheffer*, 523 U.S. 303, 308 (1998) (while criminal defendant enjoy the right to present a defense, this right is not without limits and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process"); *Allen*, 397 U.S. at 338-44.  In light of the above authority and facts, the Court concludes that the decision by the Michigan Court of Appeals rejecting this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## II.          Double Jeopardy

As noted above, Petitioner was convicted of First Degree Home Invasion and Third Degree Home Invasion.  Petitioner argues that his conviction on both charges violates his right not to be put in jeopardy more than once for the same crime.  The Double Jeopardy Clause provides that "[n]o person shall. . .be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This provision protects a criminal defendant from successive prosecutions for the same offense as well as multiple punishments for the same offense.  *See United States v. Dixon*, 509 U.S. 688, 696 (1993).  It is this latter protection which Petitioner alleges has been violated.  In both the successive prosecution and multiple punishments context "where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies."  *Id.*  Pursuant to the same-elements test, two offenses are distinct for double jeopardy purposes if each requires proof of an element that the other does not.  *Id.*

As of December 16, 2010, First Degree Home Invasion was defined under Michigan law as follows:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a)     The person is armed with a dangerous weapon.
>
> (b)     Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2).

As of December 16, 2010, Third Degree Home Invasion was defined under Michigan law as follows:

> A person is guilty of home invasion in the third degree if the person does either of the following:
>
> (a)    Breaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor.
>
> (b)    Breaks and enters a dwelling or enters a dwelling without permission and, at any time while the person is entering, present in, or exiting the dwelling, violates any of the following ordered to protect a named person or persons:
>
> > (i)    A probation term or condition.
> >
> > (ii)    A parole term or condition.
> >
> > (iii)    A personal protection order term or condition.
> >
> > (iv)    A bond or bail condition or any condition of pretrial release.

Mich. Comp. Laws § 750.110a(4).

A review of these two provisions reveals that each offense contains at least one element that is not present in the other. To convict Petitioner of First Degree Home Invasion, the prosecution was required to prove that Petitioner entered Latice Whiteside's residence without permission with the intent to assault her while another person was lawfully present. This is not an element of Third Degree Home Invasion. Likewise, to convict Petitioner of Third Degree Home Invasion, the prosecution was required to prove that Petitioner entered Latice Whiteside's residence

without permission and violated the terms of a personal protection order.  This is not an element of First Degree Home Invasion.

The Michigan Court of Appeals rejected this claim.  *Grubbs*, 2012 WL 4747180 at *2.  In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue upon which habeas relief may be granted.

**III.        Sentencing Claims**

Petitioner asserts that the trial court improperly calculated his sentencing guidelines score in violation of Michigan law.  This claim is not cognizable.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).  Accordingly, this argument is rejected.

<u>**CONCLUSION**</u>

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly, the undersigned recommends that Grubbs' petition for writ of habeas corpus be **denied**.  The undersigned further recommends that a certificate of appealability be denied.  *See Slack v.*

*McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  June 8, 2016                                      /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge